O'CONNOR PLAYDON & GUBEN LLP
JERROLD K. GUBEN   3107-0
JEFFERY S. FLORES   8691-0
Makai Tower, 24th Floor
733 Bishop Street
Honolulu, Hawaii 96813
Telephone: (808) 524-8350
Facsimile: (808) 531-8628
jkg@opglaw.com

CAIN AND HERREN, LLP
DAVID W. CAIN 6679
2141 W. Vineyard Street
Wailuku, HI 96793
Telephone: (808) 242-9350
Facsimile: (808) 242-6139
david@cainandherren.com

Attorneys for Debtor,
ALLAN JOSEPH MENDES

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>ALLAN JOSEPH MENDES,<br>operating as Mendes Ranch and Trail Rides,<br><br>        Debtor and<br>        Debtor-in-Possession. | Case No. 10-01127<br>(Chapter 12)<br><br>DEBTOR'S AMENDED CHAPTER 12 PLAN<br><br>*Plan Confirmation Hearing:*<br>Date: October 28, 2010<br>Time: 11:00 a.m.<br>Judge: Honorable Robert J. Faris<br><br>*Final Confirmation Hearing:*<br>Date: January 6, 2010<br>Time: 11:00 a.m.<br>Judge: Honorable Robert J. Faris |

# DEBTOR'S AMENDED CHAPTER 12 PLAN

Allan Joseph Mendes, operating as Mendes Ranch and Trail Rides, the Debtor herein, files and proposes the following Chapter 12 plan for the satisfaction of his creditors and obligations as provided for below:

On April 16, 2010, the Debtor filed its petition for relief pursuant to 11 U.S.C. § 1201 and continued to operate Mendes Ranch and Trail Rides. The Debtor has entered into a series of cash collateral stipulations with First Hawaiian Bank ("FHB"), as the senior secured creditor, for the use of cash collateral during the Chapter 12, upon the adequate protection payment of $5,000 per stipulation. The Debtor and FHB are current operating under the Seventh Cash Collateral Stipulation which expires on January 6, 2011.

On October 28, 2010, this Court scheduled a hearing to confirm the Debtor's Chapter 12 Plan. This Court and the creditors and parties-in-interest suggested modifications to the Plan. This is the Amended Plan, incorporating the changes suggested at the October 28, 2010 hearing to confirm the [Proposed] Chapter 12 Plan.

This is a hybrid plan, which contemplates the continued operations of the Debtor's Mendes Ranch and Trial Rides on the "operational parcel," while continuing to market one of the parcels of real property, the so-called "non operational parcel." The Debtor would retain the "operational" parcel on which the

Ranch operates its tourist and ranching business as a means of financing and funding the Plan. The Debtor initially scheduled the value of the real property, for the FHB mortgage and other liens, see Schedule D, at $7,000,486. While both parcels of land, the operational parcel on which the Ranch and Tourist Services operates, and the non-operational parcel, which is to be sold, may have a combined value in an amount in excess of the scheduled FHB secured claim, the Debtor does not believe that in the current market that the two properties could sell for $7 million. The Debtor has worked with various real estate brokers since the filing of the petition and has solicited offers from various prospective purchasers for the non-operating parcel. At this time, aside from FHB's prime mortgage on *both* the Ranch's operational parcel and the non-operational parcel, the junior lienors have not established their entitlement to a lien or secured claim on the Estate's property, given the amount of the FHB claim and the current market value of the property. The Debtor continues to solicit offers and the Plan contemplates the continued operation of Mendes Ranch & Trail Rides on the "operational" parcel and the retention of the operational Ranch property, while the Debtor will continue to market the non-operating parcel. Any offer for the non-operational real property would be subject to court-approval and would require the modification of the confirmed plan to allow the current under-secured secured creditors to possibly be reclassified as secured creditors.

FHB has a first and senior mortgage on both of the Debtor's parcels, including the real property on which the Ranch will continue its business, the so-called "operational" parcel, and any proceeds from the sale of the second non-operating parcel, will be allocated first to the payment of FHB's secured claim, after the payment of the costs and expenses of sale, and if there are surplus proceeds after the payment of the primary FHB mortgage, then to the reclassified undersecured secured creditors, to the extent of the surplus proceeds. This reclassification of the presently undersecured secured creditors and modification of the plan will occur only after notice, hearing and order of this Court. Meanwhile, the Debtor will continue to operate the Mendes Ranch & Trial Rides and retain the operational parcel on which the Ranch is operating and using the proceeds from the Ranch's business to pay the claims outlined in the Plan.

## I. CLASSIFICATION OF CLAIMS

The Debtor proposes to create the following classes of claims and interests:

### A. CLASS 1 – ADMINISTRATIVE CLAIMS.

Class 1 will be a class of administrative claims. These administrative claims will be paid through the Plan. For purposes of the Plan, the Debtor will reserve and estimate $300.00 per month for the Chapter 12 Trustee's fees. Any post-petition professional fees, which are required, and must be approved by the Court, will be paid from net operating revenues. The Class 1 administrative claims

are a continuing obligation of the Debtor and the Chapter 12 trustee and the court will monitor administrative claims.

### B. CLASS 2 – SECURED CLAIM OF FIRST HAWAIIAN BANK.

First Hawaiian Bank ("FHB") has filed a proof of secured claim in the amount of $1,667,721. The Plan will pay FHB $10,000 per month, until the non-operating real property is sold and the net proceeds, after the payment of costs of sale, will be paid over to FHB to satisfy the remaining portion of the allowed secured claim. FHB is cross-collateralized, with a mortgage on the Ranch's operational parcel and a prime mortgage on the non-operating parcel. To the extent that the non-operating parcel is sold in a sufficient amount to satisfy the FHB claim, the surplus proceeds, if any, will be used to pay the reclassified undersecured secured creditors, if the pre-petition putative junior liens attach to the Ranch's operational parcel. The claims of the undersecured secured creditors will be reclassified as Class 2 claims, when the FHB prime mortgage is fully satisfied. The reclassification of the undersecured secured creditors, will be after notice, hearing and court order. While the Debtor is marketing the non-operational parcel, the Debtor will continue to operate the Ranch, generate income and pay the distributions provided for under the Plan.

C.  **CLASS 3 – SECURED CLAIM OF CHASE HOME FINANCE.**

Chase Home Finance has filed a proof of secured claim in the amount of $361,119. The monthly payment of the Chase Home Finance is $2,973, which will be paid as a secured claim, with a mortgage on Allan Mendes' residential property. Any pre-petition delinquency will be "cured" outside of the Plan.

D.  **CLASS 4 – HAWAII COUNTY EMPLOYEES FEDERAL CREDIT UNION**

Hawaii County Employees Federal Credit Union ("HCEFCU") has a mortgage on residential property in the amount of $145,243.00, paid at $1580.00 per month. This will be paid as a secured claim, with a mortgage on real property.

E.  **CLASS 5 – UNDERSECURED SECURED AND UNSECURED CREDITORS.**

The following creditors will be treated as undersecured secured or unsecured creditors. Some of the creditors in Class 5 may have liens, but will be treated as unsecured creditors, pursuant to 11 U.S.C. § 506(d).

| Claim No. | Claimant | Amount | |
|---|---|---|---|
| 1 | Carlsmith Ball | $25,220 | |
| 3 | American Classic Voyages | 42,904 | |
| 4 | Manuel Mendes | 287,083 | [1] |
| 6 | Cargill Inc. | 9,316 | |
| 7 | Koolau Cattle Co. | 91,866 | |
| 9 | James P. Brumbaugh | 81,044 | [2] |
| 10 | Maui Circulation, Inc. | 1,866 | |

---

[1] The Claim of Manuel Mendes is classified as to Class 5, undersecured secured claim, subject to reclassification as a higher priority Class 2 claim, if the senior and prime lien of FHB is paid in full. The Debtor reserves the right to object to the Mendes claim at any time.

[2] The Claim of James P. Brumbaugh is classified as to Class 5, undersecured secured claim, subject to reclassification as a higher priority Class 2 claim, if the senior and prime lien of FHB is paid in full. The Debtor reserves the right to object to the Brumbaugh claim at any time.

|        | Total | $539,299 |
|--------|-------|----------|

*(\*filed claims only)*

Class 5 creditors will receive $1,100 per month for 60 months for a total recovery of 11%.

## II. OPERATIONAL PLANS FOR CONSUMATING CHAPTER 12 PLAN

The Debtor, by and through various entities, operates Mendes Ranch and Trail Rides, a tourist-oriented activity on the "operational" parcel. This will be designated the "operating" parcel because the Debtor plans to retain the parcel and operate the Ranch and Trail Rides on the property. The Debtor also owns a second parcel, a non-operational parcel, which is the parcel which is being marketed and offered for sale. The Ranch's operations have suffered during the recent downturn in the tourist business, but operations continue to generate income. The Debtor has only two ways of satisfying its Chapter 12 obligations. First, by periodic payments from net operating income, as set forth in the budget by continuing to operate the Ranch. The continued operations of the Ranch and Trail Rides business will fund the Chapter 12 plan. Second, by an orderly marketing of the non-operational parcel, which is not needed for Ranch operations, the Debtor hopes to satisfy the FHB loan and mortgage. The non-operational parcel is unique and the Debtor has worked with various realtors on Maui to solicit offers and participate in marketing the property. Should any offer be obtained during the course of the Plan, under §

363(b), the Debtor will bring the offer to Court, if the offer is accepted, and the property sold, the Debtor will modify the Plan accordingly.

While the Debtor continues to solicit offers for the sale of the non-operational parcel during period prior to the sale of the real property, the Debtor proposes to operate Mendes Ranch and Trails and make periodic on the Chapter 12 plan based on the following budget (all numbers are based on the latest accounting):

| | | |
|---|---:|---:|
| Gross Income | $68,000 | |
| Monthly Expenses | | |
|   Payroll | 18,000 | |
|   Feed | 9,500 | |
| | | 27,500 |
| Taxes | | |
|   Property Tax | 400 | |
|   Monthly GET | 3,500 | |
|   Delinquent GET[1] | 2,600 | |
| | | 6,500 |
| Insurance | | |
|   General Liability | 800 | |
|   Trail Ride Liability | 2,500 | |
|   Auto Insurance | 750 | |
|   Life | 585 | |
| | | 4,635 |
| Food and Supplies | 3,100 | |
| Fuel | 1,000 | |
| | | 4,100 |
| Utilities | | |
|   Propane | 75 | |
|   Internet | 50 | |
|   Electric | 150 | |
| | | 275 |
| Vehicles | | |
|   Ford E350 | 668 | |
|   Ford F150 | 530 | |
|   Wells Fargo | 850 | |
| | | 2,048 |
| Miscellaneous | | |

|   |   |
|---|---|
| Telephone (business/cell) | 1,085 |
| Repairs | 1,040 |
| Land Lease – Trail Ride | 500 |
| Horse Shoeing | 1,000 |
| Advertising | 1,000 |
| Office Supplies | 585 |
| Equipment Rental | 200 |
| Pest Control | 112 |
| Veterinary | 250 |
|   | 5,772 |
| **Total Expenses** | **50,830**[2] |
| **Projected Net Operating Income Available for Payment of Chapter 12 Plan** | **$17,170** |

---

[1] *State of Hawaii Tax Claims.* The State of Hawaii has a scheduled Schedule E claim of $152,000.00 (adjusted), as a priority secured creditor for delinquent general excise taxes. The State has issued a notice of levy on the delinquency and has become a secured creditor of the Estate. See §§ 231-61 to 70, H.R.S. The Debtor proposes to pay this priority secured tax claim in 60 equal installments of $2,600.00 per month, to include an interest component as an ordinary business expense. This claim includes the obligation of the individual and corporate entities to the State of Hawaii for unpaid general excise taxes. The delinquent State of Hawaii GET liability of $152,000 will be paid as an ordinary course of business expense, and is included as a regular monthly business expense. The delinquent GET will be paid along with the current GET payments of Mendes Trial Rides.

[2] As per the usual cash collateral budget, the Debtor has also calculated the expenses at 5% above the current budget, which yields monthly operating expenses of $50,650.

From the projected revenues of $68,000, less the projected expenses of $50,830, yields a net surplus revenue of approximately $17,170 per month.

From this projected Net Operating Income, the Debtor has projected Plan payments at $16,200.

The Plan payments are as follows by Class of Claimants:

| Class | Claimant | Payment |
|---|---|---|
| 1 | Administrative Expenses | 300 |
| 2 | First Hawaiian Bank (partial payment) | 10,000 |
| 3 | Chase Mortgage Payment | 3,200 |
| 4 | Hawaii County Employees FCU | 1,600 |
| 5 | Unsecured Creditors | 1,100 |
|   | **Total Monthly Operating Plan Payments** | **16,200** |

The Debtor proposes a two-track or dual track operating plan. The first track involves the continued operations of the Debtor's real property as Mendes Ranch and Trail Rides. The operational parcel will generate the Surplus Revenues which will be used to satisfy the payments under the Plan.

The second track involves the non-operational parcel or real property. This is the property which the Debtor is currently marketing and if sold will be used to pay down, or pay off, FHB, which has a prime mortgage on both the operational parcel, on which the Ranch operates, and the non-operational parcel, which is being offered for sale.

## III. DETAILED DESCRIPTION OF TREATMENT OF CLASSES

### A. CLASS 1 – ADMINISTRATIVE CLAIMS.

The Debtor proposes to pay the post-petition administrative expenses, including the Chapter 12 trustee's fees at the rate of $300 per month or approximately $3,600 per year or $18,000 for the 60 month term of the Plan, if the Chapter 12 plan is consummated over the 60-month period. This will *not* include any post-petition professional fees to the Debtor's counsel and other professionals who may, from time to time, apply for compensation, to be adjusted for additional commission and fees earned by the Chapter 12 trustee.

### B. CLASS 2 - SECURED CLAIM OF FIRST HAWAIIAN BANK.

FHB is a secured creditor with a mortgage on both of the Debtor's properties in the amount of $1,677,121. The Debtor cannot make the full monthly

payment on the debt as per the contract, but is allocating $10,000 per month from the Net Operating Income to pay the interest only, principal and interest or principal only on the secured FHB claim, as determined by the Court. As the holder of a first mortgage on both the operational property which the Debtor will retain to operate the Mendes Ranch and Trail business, and a first mortgage on the non-operational parcel estate, which the Debtor has been and will be offering for sale, FHB has a claim on the sales proceeds, if during the 60-month plan period of the non-operational parcel is sold. As the prime mortgagee on *both* the operational Ranch property and the non-operational to be sold, which is being offered for sale, at $1,677.121 FHB maybe an oversecured creditor.

### C. CLASS 3 - SECURED CLAIM OF CHASE HOME FINANCE LLC.

Chase Home Finance has a filed a proof of secured claim in the amount of $361,119, secured by a residential mortgage on land owned by Allan Mendes. Chase will be paid at the contract rate of $2,973 or $3,200 per month in the Plan. The Debtor will continue to make payments on the mortgage during the plan. The pre-petition delinquency, if any, will be cured outside of the Plan.

### D. CLASS 4 - SECURED CLAIM OF HAWAII COUNTY EMPLOYEES FEDERAL CREDIT UNION.

HCEFCU has a mortgage on the Debtor's residential property. The Debtor has projected monthly payments of $1,580 or $1,600 per month for this

secured creditor with a mortgage on land owned by Allan Mendes. The Debtor will continue to make payments during the Plan, according to the note and mortgage.

### E. CLASS 5 - UNDERSECURED AND UNSECURED CREDITORS.

Class 5 includes the following filed proofs of claim:

| Claim No. | Claimant | Amount |
|---|---|---|
| 1 | Carlsmith Ball | $25,220 |
| 3 | American Classic Voyages | 42,904 |
| 4 | Manuel Mendes | 287,083 |
| 6 | Cargill Inc. | 9,316 |
| 7 | Koolau Cattle Co. | 91,866 |
| 9 | James P. Brumbaugh | 81,044 |
| 10 | Maui Circulation, Inc. | 1,866 |
| | **Total** | **$539,299** |

*(*filed claims only)*

Payments at $1,100 per month for 60 months or $66,000 or 11%.[3]

The Debtor reserves the right to object to any filed proofs of claim, and the distribution to the Class 5 creditors will be adjusted accordingly, including the putative secured claims of Manuel Mendes and James P. Brumbaugh.

To the extent that any of the above-scheduled Class 5 creditors believe they should be treated as separately classified secured creditor, based on the value of the collateral securing their claim, the putative claimants must file a Motion pursuant to 11 U.S.C. § 506(a) and Rule 3012, F.R.Bk.P. to value the

---

[3] This recovery will be modified if the claims of Manuel Mendes and James P. Brumbaugh are "reclassified" as Class 2 claims once FHB's prime lien is satisfied, then the putative secured claims of Mendes and Brumbaugh will be reclassified as Class 2 claims. The Debtor reserves the right to object to validity, priority and extent of the Mendes and Brumbaugh claim.

collateral securing their putative secured creditor's claim to determine if the creditor is secured or unsecured.

Without a full appraisal of the real properties, and the FHB as a cross-collateralized prime mortgagee on both the Ranch's operational parcel and the non-operational real property which is being offered for sale, it cannot be ascertained at this time to what extent FHB is "oversecured." If FHB is oversecured, and is fully satisfied by the sale of the non-operational parcel, then with the release of the FHB mortgage on the non-operational property and the Ranch's operational parcel, presently the claims of the presently Class 5 undersecured secured creditors may be reclassified as Class 2 claimants, and the Plan will be modified to reclassify the undersecured secured creditors as Class 2 claimants, if the Class 5 undersecured secured creditors are entitled to reclassification.

However, if the potentially oversecured claim of FHB is not satisfied by the sale of the non-operational parcel, as a cross-collateralized mortgagee, FHB retains its prime mortgage interest on the Ranch's operational parcel.

Therefore, because of the cross-collateralized prime position of FHB, the unsecured putative secured creditors, with claims on either the Ranch's operational parcel and the non-operational parcel, which is being marketed will have to establish their secured status pursuant to 11 U.S.C. § 506(a).

## IV. ADDITIONAL PROVISIONS

A.  **EXECUTORY CONTRACTS AND UNEXPIRED LEASES.**

With respect to ongoing leases, to avoid the assumption and possible subsequent rejection, after their assumption, the Debtor will treat the vehicle leases and other leases pursuant to 11 U.S.C. § 365(d)(5) and make the payment as required and provided for in the budget.

B.  **EFFECTIVE DATE OF PLAN.**

The effective date of this plan shall be the date that the United States Bankruptcy Court enters its order confirming this plan.

C.  **VESTING OF PROPERTY.**

Upon confirmation of the plan, all of the property of the chapter 12 estate shall vest in the debtor.

D.  **AVOIDANCE OF LIENS ON EXEMPT PROPERTY OR UNDERSECURED PROPERTY.**

The Debtor has scheduled putative undersecured secured claims on the operational, or Ranch parcel and non-operational parcel, sales parcel, as Class 5 claims. FHB has a cross-collateralized first mortgage on the Ranch's operational parcel, which the Debtor will retain to operate and finance the Chapter 12 Plan, and market the non-operational parcel. To the extent that the non-operational properties are sold for a sufficient amount to satisfy the possibly oversecured claim of FHB, the lien undersecured secured creditors as putative secured creditors' may

attach to the Ranch's operational parcel, reclassified as secured creditors and classified as Class 2 claimants.

Because it cannot be determined *at this time*, whether there is sufficient collateral to secure FHB *and* the putative undersecured secured creditors for purposes of the Plan, the undersecured secured lienors will be treated under § 506(a) and § 506(d), unless the junior lienors establish their entitlement to liens based on Rule 3012.

| Claim No. | Claimant | Amount |
|---|---|---|
| 4 | Manuel Mendes | $287,083 |
| 9 | James P. Brumbaugh | $81,044 |

## V. COMPLIANCE WITH CONFIRMATION REQUIREMENTS.

### A. COMPLIANCE WITH LAWS AND GOOD FAITH.

The Debtor believes that the plan complies with all provisions of chapter 12 and any other applicable provisions of the Bankruptcy Code, that the plan has been proposed in good faith and not by any means forbidden by law, and that all fees, charges or amounts required to be paid before confirmation have been paid.

### B. FEASIBILITY.

Based upon the projected income and expenditures contained in Debtor's Chapter 12 Statement and the Budget prepared herein, Debtor believes that Debtor will be able to make all payments required by the Plan. This is based

on the Debtor's budget of income and operating expenses and includes payments required under the Plan. Moreover, the Debtor will continue to market all or part of the non-operating parcel to satisfy the FHB primary mortgage, in full or in part.

The Debtor believes that with the dual track plan, continuing to operate the Ranch on the operating parcel, to pay the Chapter 12 expenses and generate funds for the payment provided for by the Plan, and market the non-operational parcel to satisfy the FHB cross-collateralized mortgage. The sale of the non-operational parcel, for the benefit of FHB should "free up" equity on the Ranch's operational parcel, for the putative underunsecured secured creditors whose liens may attach on the operational parcel. However, while the Debtor is selling the non-operational parcel to satisfy the FHB prime mortgage, to the extent that the sale of the non-operational parcel reduces the FHB secured claim, the Debtor will continue to operate the Ranch to make payments provided for under the Plan.

### C. CHAPTER 7 COMPARISON.

Based upon the values of the Debtor's assets and the amount of secured and unsecured claims as set forth in the Debtor's Chapter 12 Statement and budget, the Debtor believes that the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. The Debtor

believes that the return to general unsecured creditors under a Chapter 7 could be less because all of the assets are encumbered by liens and/or security interests.

Under Chapter 7, FHB could exercise its right to modify the stay and foreclose on its mortgage and security interests and thereby remove all of the secured property from the estate. Since FHB is the prime mortgagee on both the Ranch's operational parcel and the non-operational parcel, even if FHB is fully or partially satisfied by the sale of the non-operational parcel, that would not free-up equity for the unsecured creditors because currently undersecured secured creditors would have their liens attach to the equity, which is freed-up by FHB's receipt of the sales proceeds. The *unsecured creditors* are not likely to have any distribution based on a liquidation of the parcels, given the amount of the secured and undersecured secured creditors. The unsecured creditors will not have any proceeds to distribute, if the secured creditors are paid.

## VI. MANNER IN WHICH PAYMENT OF CLAIMS SHALL BE MADE

Debtor shall pay to the Trustee, Howard M.S. Hu, semiannually on June 30 and December 31, as a Class 1 claim, the statutory commissions. Payments to the Classes 2, 3 and 4 claimants shall be paid monthly by the Debtor directly to the secured creditors. The first such payments shall be made on the effective date of the Plan. The Trustee shall make distribution of these payments and receipts to the Class 5 creditors pro-rata. If during the 60 month term of the plan, the real property is sold, the Debtor will modify the Plan to account for any

distribution to FHB, as the senior secured creditor. To the extent that a § 363(b) sale of the property yields proceeds in excess of the claim of FHB, the putative undersecured secured creditors, after notice, hearing and order of the Court, may be reclassified as Class 2 claimants. The Debtor reserves the right to object to any claim, secured or unsecured.

## VII. REVESTING OF TITLE TO PROPERTY

Title to property of the estate, subject to existing liens which are valid in bankruptcy, shall vest in the debtor upon confirmation of this Plan.

DATED: Honolulu, Hawaii, December 13, 2010.

_____
JERROLD K. GUBEN
DAVID W. CAIN
Attorneys for Debtor,
ALLAN JOSEPH MENDES,
operating as Mendes Ranch and
Trail Rides